UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAM E. CHANCE, JR. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, BRAD LIVINGSTON, in his official | § | CIVIL ACTION NO. |
| capacity as Executive Director of the Texas | § | |
| Department of Criminal Justice, and CYNTHIA | § | |
| LOWERY, BILL PIERCE, and EDGAR | § | 1:11-cv-508 |
| BAKER in their individual capacities | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff William E. Chance, Jr. respectfully files this complaint and would show:

### STATEMENT OF CLAIMS

1.   Defendant Texas Department of Criminal Justice and its officials prevents Plaintiff William E. Chance, Jr. from exercising his sincerely held Native American religious beliefs.

2.   Mr. Chance brings this civil rights action for declaratory and injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and the Free Exercise clause of the First Amendment and Equal Protection clause of the Fourteenth Amendment to the United States Constitution, seeking injunctive and declaratory relief from Defendants Texas Department of Criminal Justice (TDCJ) and Brad Livingston, in his official capacity as the executive director of TDCJ.

3.   Mr. Chance further seeks nominal and punitive damages against Defendants Cynthia Lowery, Bill Pierce and Edgar in their individual capacities only for violations of his constitutional rights.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 2201 (Declaratory Judgment Act). This Court has supplemental jurisdiction to consider Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (3), as Defendants reside or can be found within this district and division.

PARTIES

6.    Plaintiff William Chance is a Texas state inmate in TDCJ's Michael Unit in Tennessee Colony of Anderson County, Texas.

7.    TDCJ is the state prison system, an agency of the State of Texas, and can be served with process by serving Brad Livingston, its executive director, at 209 W. 14th Street, Austin, Texas 78701.

8.    At all relevant times, Livingston was the Executive Director for TDCJ, and acting under color of law and as the agent, and as a matter of law, the official representative of TDCJ. Livingston is sued in his official capacity for injunctive and declaratory relief only.

9.    At all relevant times, Defendant Cynthia Lowery was the chaplain at the TDCJ Michael Unit and acting under color of law and as the agent, and as a matter of law, the official representative of TDCJ.  Lowery is sued in her individual capacity for nominal and punitive damages.  She can be served with process at 2664 FM 2054, Tennessee Colony, Texas 75886.

10.    At all relevant times, Defendant Bill Pierce was the director of chaplaincy programs for TDCJ, and acting under color of law and as the agent, and as a matter of law, the official representative of TDCJ.  Pierce is sued in his individual capacity only for nominal and punitive damages.  He can be served with process at 1060 Highway 190 E, Huntsville, TX 77340.

11.    At all relevant times, Defendant Edgar Baker was a warden at the Michael Unit and acting under color of law and as the agent, and as a matter of law, the official representative of

2

TDCJ.  Baker is sued in his individual capacity only for nominal and punitive damages.  He can be served with process at 349 Private Road 8430, Jasper, TX 75951.

## STATEMENT OF FACTS

12.  William Chance is a member of the Native American faith group, and is a sincere adherent of that faith.  Since the beginning of his incarceration, Mr. Chance has been an active member of the Native American community and adheres to various facets of the Native American faith traditions.

13.  Various ceremonies are essential in the Native American faith traditions Mr. Chance practices.  Unlike Western religions, where the ceremony is usually a means to serve theology, the rituals performed in the Native American faith are an established practice that is distinct and as vital as the supported theology.  The ceremonies and practices in and of themselves are essential to Mr. Chance's exercise of his sincerely held religious beliefs.

14.  To practice his faith, it is necessary for Mr. Chance to participate in Native American teaching ceremonies every week, and a biweekly pipe ceremony.

## 'SMUDGING' RITUAL

15.  Prior to these rituals, Mr. Chance is required to participate in a "smudging" ceremony, where he rubs the smoke of certain burned herbs on his body.  Smudging is a purification ritual, and is mandatory for Mr. Chance to properly partake in the ceremonies with a purified state of being.  The minimum amount of herb, most frequently sage, that will suffice for use during this smudging ceremony is one tablespoon.

16.  Defendant Lowry refused to allow Mr. Chance to participate in smudging ceremonies after he made written requests in 2009.

## PIPE CEREMONIES

17.  The pipe ceremony is a sacred ritual in Native American faith traditions.  Mr.

Chance sincerely believes it should be held twice each month, once the day after the new moon, and once the day after the full moon.  Adherents like Mr. Chance believe the pipe ceremony brings a connection between the physical and spiritual worlds.  Smoking a small amount of tobacco creates a symbolic link between the earth and sky as the plant's roots go deep into the ground while the smoke rises high into the heavens.  The pipe ceremony is not mere enjoyment. Native American adherents smoke the pipe to offer their prayers to the Spirits through the smoke.  Traditionally different Native American tribes, like the prisoners from various tribes incarcerated in TDCJ, would use the ceremony to bind tribes to a treaty.  The minimum amount of tobacco that will suffice for this pipe ceremony is one ounce.  When Mr. Chance cannot participate in the pipe ceremony, his religious exercise is substantially burdened.

18.   Mr. Chance has two serious infectious diseases, Hepatitis C and Tuberculosis. Because of his communicable diseases, he cannot smoke from the communal pipe used during pipe ceremonies.  He needs a personal pipe to use during the pipe ceremony to protect the health and safety of the other members of the Native American congregation.  The personal pipe could be kept by the prison chaplain with the communal pipe, and Mr. Chance's access to it could be limited to the weekly pipe ceremonies.  The provision of this necessary personal pipe would not be any burden upon TDCJ, as TDCJ policy already allows for the prison's chaplain to maintain a communal pipe for use during the ceremonies.

19.   In 2010, Mr. Chance made formal requests to Pierce to have a personal prayer pipe so he could participate in the sacred pipe ceremony.  Pierce denied this request.

TEACHING CEREMONIES

20.   The Native American teaching ceremony is a comprehensive ceremony that occurs every week.  The ceremony usually lasts about two hours, and teaches congregants how to prepare for the sacred pipe ceremonies.

21.  Prior to the teaching and pipe ceremonies, the room used for the meeting, usually a large space such as the prison gymnasium, needs to be wafted with cedar smoke to cleanse the area.  The center prayer area needs to be blessed with prayers and an offering of a small amount of cornmeal.  Then a medicine bundle is placed in the center of the prayer area and four stones are placed along the circular edge to mark the four cardinal directions.  During this time, adherents arrive, partake in the smudging ceremony, and are seated in a circle around the ceremonial area.  An opening prayer is made, then a community teaching is given.  After the teaching, the adherents break up into smaller teaching circles for discussions.

22.  During the teaching ceremony, individuals are allowed to enter the ceremonial area for personal ritual prayer offerings and meditations.  Just before the meeting ends, all adherents gather into a circle around the ceremonial area and a closing journey prayer is offered.

23.  Mr. Chance sincerely believes weekly teaching ceremonies are required to practice his faith.  Prohibiting him from attending these teaching ceremonies substantially burdens his religious exercise.

24.  Since May 2009, at the Michael Unit, TDCJ, Lowery, Pierce, and Baker prohibit Native American followers, like Mr. Chance, from participating in any proper ceremonies, including the teaching ceremony, the smudging ceremony, and the pipe ceremony.  In 2009, Defendants Baker and Pierce informed Mr. Chance services were being discontinued until a volunteer chaplain could be found to perform the services.  Mr. Chance is still waiting for the ceremonies to resume.

25.  Prior to May 2009, TDCJ did provide the proper Native American ceremonies to Mr. Chance and similarly situated adherents at the Michael Unit.

26.  When Mr. Chance asked Defendant Lowery why ceremonies stopped being held, she told him she was "not required" to provide ceremonies even though, as the prison's chaplain, she

is required by TDCJ policy to "facilitate prisoners in the exercise of religious freedom."

OTHER CEREMONIES

27.   TDCJ and Defendants Lowery and Pierce also prohibit Mr. Chance and other Native American adherents from congregating for worship on important holy days.   Mr. Chance sincerely believes it is necessary to hold a "wiping away of tears" ceremony on specific important dates in Native American history, such as the anniversaries of the Sand Creek Massacre (November 29), the Trail of Tears (June 5), the Battle of Wounded Knee (December 29), and the Battle of Little Bighorn (June 25).

28.   The "wiping away of tears" ceremony is a sacred pipe ceremony where Native Americans remember these anniversaries as important spiritual events.   For Native American adherents, like Mr. Chance, the "wiping away of tears" ceremony allows grief and historical animosity to be offered to the Spirits to cleanse the worshiper of these feelings.   The commemorations have an important religious component, and preventing Mr. Chance from observing these holy days substantially burdens his sincere religious beliefs.

29.   Prior to May 2009, TDCJ, Pierce and Lowery allowed Native American prisoners at the Michael Unit to hold "wiping away of tears" ceremonies on or around the relevant dates.

KEEPING OF SOULS

30.   Mr. Chance's religious beliefs require him to practice "keeping of souls" when a close relative dies.   During the "keeping of souls" practice, a small lock of the deceased's hair is kept in a small bag held against the body.   The bag is carried for one year to remember the life of the deceased.

31.   Mr. Chance's parents died in 2008.   TDCJ will not allow him to have small locks of their hair that his family saved for him to practice "keeping of souls."   Pierce and TDCJ prohibit possession of this small amount of hair for "health reasons" – the only objection they have ever

6

voiced to Mr. Chance.  Prohibiting Mr. Chance from practicing "keeping of souls" substantially burdens his religious exercise.

32.  TDCJ will, however, allow Mr. Chance to keep a medicine bag, which, according to TDCJ policy, can include other human or animal parts, such as feathers, bone, claws, teeth, and fur.  Mr. Chance's medicine bag, which he could keep the hair of his parents in, also has a three inch long horsehair tassel.

33.  Defendants have never demonstrated the existence of any compelling government interest for their decision to substantially burden Mr. Chance's religious exercise by denying him access to Native American ceremonies and prohibiting him from practicing "keeping of souls."

34.  TDCJ cannot demonstrate how the refusal to provide these ceremonies and religious items use the least restrictive means of advancing any compelling government interest.

35.  Other religious groups at the Michael Unit are allowed to practice their religious beliefs through ceremonial gatherings, and to possess devotional items.

36.  The Michael Unit is a designated "Native American Religious Practice" unit, where Native American services are allegedly provided.  Because the Michael Unit is a designated NARP unit, a substantial number of Native American practitioners are housed there.

37.  Mr. Chance asked Lowery and Pierce for permission to engage in all the above religious practices.  Though Mr. Chance's constitutional right to practice his religious beliefs is clearly established, Lowery, Baker and Pierce refuse to let him practice his religious beliefs by attending the pipe ceremony, teaching ceremony, and denying him the use of a personal prayer pipe, lock of his parents hair for "keeping of souls," and prohibiting Native American congregations from meeting for "wiping away of tears."

38.  In 1997, TDCJ officials were enjoined from prohibiting prisoners from participating in the sacred pipe ceremony.  *See Yellowquill v. Scott*, No. H-95-1080 (S.D. Tex. May 27, 1997)

(unpublished). The individual defendants knew of the *Yellowquil* injunction, and the resulting settlement agreement which requires TDCJ to provide sacred pipe ceremonies twice per month (with personal prayer pipes for the congregants), and smudging ceremonies. Despite actual knowledge of the importance of providing Native American services for sincere believers like Mr. Chance, Defendants Pierce, Lowery, and Baker callously ignored their obligations under the law.

## CAUSE OF ACTION I – RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

39. TDCJ deprives and continues to deprive Mr. Chance of his right to the free exercise of religions, as secured by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, by unlawfully imposing a substantial burden on his religious exercise.

40. TDCJ's refusal to allow Native American adherents, including Mr. Chance, the right to participate in Native American teaching ceremonies, smudging ceremonies, and pipe ceremonies (1) influences Mr. Chance to act in ways that violates his religious beliefs thus hindering his ability to reform and rehabilitate, and (2) forces Mr. Chance to choose between, on the one hand, enjoying a generally available and non-trivial benefit, and, on the other hand, following his religious beliefs.

41. TDCJ further restricts Mr. Chance's rights under RLUIPA by prohibiting him from practicing "keeping of souls" by possessing a small lock of his deceased parents' hair, prohibiting him from obtaining a personal prayer pipe for use during pipe ceremonies, and failing to allow Native American ceremonies on the designated holy days.

42. TDCJ restricts Mr. Chance's religious practice in the absence of any compelling governmental interest. Any alleged compelling governmental interest is not furthered through the least restrictive means.

43. TDCJ receives federal financial assistance.

44. Mr. Chance seeks declaratory and injunctive relief under RLUIPA against Defendants TDCJ and Livingston in his official capacity.

## CAUSE OF ACTION II – FREE EXERCISE OF RELIGION

45. Defendants Livingston, Pierce, Lowery and Baker have deprived and/or continue to deprive Mr. Chance of his right to the free exercise of religions, as secured by the Free Exercise clause of the First Amendment, by unlawfully imposing a substantial burden on his religious exercise.

46. No legitimate penological interest justifies Defendants unlawful restraint of Mr. Chance's religious exercise.

47. Under the First Amendment, Mr. Chance seeks nominal and punitive damages, and declaratory and injunctive relief against Defendants Pierce, Lowery, and Baker, and declaratory and injunctive relief against Defendant Livingston.

## CAUSE OF ACTION III – EQUAL PROTECTION

48. Defendants' refusal to approve Mr. Chance's request to participate in Native American ceremonies consistent with his beliefs and to possess approved religious devotional items, while permitting inmates holding other religious beliefs to do so, favors some religions over others, and thereby violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

49. Defendant Lowery's refusal to facilitate Native American services, while allowing other religious groups to hold their religious ceremonies, intentionally discriminates against Native Americans like Mr. Chance.

50. Defendants' actions favor some religions over others and burdens a fundamental right – Mr. Chance's free exercise of religion. This discriminatory practice targets members of

the Native American faith and does not further any legitimate penological interest.

51.  Under the Fourteenth Amendment, Mr. Chance seeks nominal and punitive damages, and declaratory and injunctive relief against Defendant Lowery, and declaratory and injunctive relief against Defendant Livingston.

## DECLARATORY JUDGMENT

52.  Mr. Chance requests all appropriate declaratory relief that this Cour can grant.

## DAMAGES

53.  Mr. Chance seeks nominal and punitive damages against Defendant Lowery.  He is entitled to nominal damages for each discrete incident where he was denied the opportunity to practice his sincerely held religious beliefs.

## INJUNCTIVE RELIEF

54.  Mr. Chance seeks injunctive relief, permanently enjoining Defendants from:

   a.  restricting Mr. Chance's religious practices;

   b.  denying Mr. Chance the right to congregate for teaching ceremonies with other Native Americans on a weekly basis;

   c.  denying Mr. Chance the right to congregate for Native American pipe ceremonies on a biweekly basis;

   d.  denying Mr. Chance the right to participate in a smudging ceremony prior to all pipe and teaching ceremonies;

   e.  denying Mr. Chance the required herbs, such as sage, in order to effectuate the smudging ceremony;

   f.  denying Mr. Chance a personal pipe for use during Native American pipe ceremonies;

   g.  denying Mr. Chance possession of a small lock of his parents' hair to participate

in "keeping of souls;" and,

h.   denying Mr. Chance and other Native American adherents the opportunity to congregate for pipe ceremonies on the above identified holy days.

## ATTORNEYS' FEES AND COSTS

55.   Pursuant to 42 U.S.C. § 1988, Mr. Chance is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiff William E. Chance, Jr. therefore respectfully requests the Court:

A.   Grant declaratory and injunctive relief as set out in this complaint;

B.   Award nominal and punitive damages against Defendants Lowery, Baker and Pierce, in their individual capacity;

C.   Grant reasonable attorneys' fees, litigation expenses, expert fees, and costs; and

D.   Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: June 16, 2011.

Respectfully Submitted,


_____/s/ Scott Medlock_____
Scott Medlock
State Bar No. 24044783
James C. Harrington
State Bar No. 09048500
Wayne Krause
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFF